**UNITED STATES v. NORTHEAST TEXAS CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASS'N, et al.**

No. 12723.

United States Court of Appeals
Fifth Circuit.

March 24, 1950.

Donald P. McHugh, Atty., Department of Justice, Herbert A. Bergson, Asst. Atty. Gen., Edward Kenney, Sp. Asst. to Atty. Gen., Frank B. Potter, U. S. Atty., Fort Worth, Texas, for appellant.

W. B. Harrell, Alex F. Weisberg, Nash R. Adams, J. L. Lancaster, Jr., Chandler Lloyd, J. P. Rice, Russell V. Rogers, Jr., Geo. S. Wright, Logan Ford, Dallas, Texas, for appellees.

Before HUTCHESON, Chief Judge, and WALLER, and RUSSELL, Circuit Judges.

PER CURIAM.

By this appeal the Government challenges the correctness of the trial court's ruling dismissing an indictment charging named electrical jobbers and electrical contractors, the Northeast Texas Chapter of the National Electrical Contractors Association, and its managers, in the Dallas, Texas, area with having engaged in a combination and conspiracy in restraint of trade and commerce among the several states in electrical equipment and services in violation of section 1 of the Sherman Act.[1] The two count indictment in the first count, charges all defendants with having entered into the illegal combination, while the second charges only the Contractor Associa-

tion, its manager and the electrical contractors. Separately, but by motions presenting substantially the same objections, those who may be denominated the jobber group and the contractor group moved to dismiss the indictment because, as contended, the indictment in neither count contained a plain and definite statement of essential facts constituting the offense charged, and because it was not, as required by the Constitution and Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., sufficiently definite to inform the defendants of the nature of the charge or enable them to prepare their defenses or to plead an acquittal or conviction in bar because of its failure to allege either the factual basis relied upon by the Government, the manner or time of any joinder of any defendant into the conspiracy, or the nature or means by which it was intended to be, or was, effectuated. The several motions further asserted a misjoinder of parties and a misjoinder of offenses, as well as the objection that the indictment failed on its face to show a restraint of commerce within the meaning of the Sherman Act. Each group of defendants likewise moved for severance of parties and charges upon the separate counts upon the ground that in view of the nature of the charge and the fact that two conspiracies were charged, in which the defendants were not the same, a joint trial would "confuse and bewilder the jury." The trial court, in an opinion dismissing the indictment, apparently predicated his order upon the failure of the indictment to comply with the pertinent parts of Rule 7(c) of the Federal Rules of Criminal Procedure, and because of his view that prejudice might result from one trial of all defendants upon two counts of the indictment charging separate conspiracies. The Government urges that the indictment not only clearly states the essential facts charged to constitute the illegal conspiracies, but also that these facts show a violation of the criminal statute, and while denying that there is any misjoinder of parties or of prejudicial accusations, urges that even if this view be incorrect, it would be ground

1.  15 U.S.C.A. § 1.

for severance or election rather than for dismissal.

We agree with the Government's contentions. We are not at all impressed with the argument that there is confusion and uncertainty as to the allegations of the indictment. The facts which it is claimed constitute the offense charged are clearly set forth. The question is rather whether these allegations actually charge in offense, that is, whether the agreements alleged to have been entered into, in the light of other facts alleged in the indictment, constitute a combination or conspiracy which is a violation of the Sherman Anti-Trust Act. If they do, the absence of other and additional direct allegations that the acts were intended to or did illegally restrain commerce, of which much is made in the defendants' argument, would not require a dismissal of the indictment.

The indictment charges that in their respective capacities as jobbers of electrical equipment and electrical contractors (and these capacities and terms are fully defined), the defendant electrical contractors performed a substantial amount of the total commerce carried on in connection with the sales of electrical equipment to consumers and the installation, alteration or repair of electrical systems in the Dallas area. During the year 1946, the members of the defendant Northeast Texas Chapter of the National Electrical Contractors Association did a gross business of approximately five million two hundred fifty thousand dollars. Over seventy-five percent of the electrical equipment sold by electrical contractors in the Dallas area, and over seventy-five percent of that sold by the defendant electrical contractors in that area is produced outside the State of Texas and shipped in interstate commerce from the points of manufacture to the Dallas area. The defendant electrical jobbers sold a substantial amount of the total electrical equipment sold to contractors in the Dallas area, and during the year 1946 did a gross business of approximately six million dollars in that area, of which over seventy-five percent was produced at factories outside of Texas and shipped in interstate commerce from said factories to the Dallas area. Further, the defendant contractors purchased substantial amounts of electrical equipment to be resold by them in connection with the installation, alteration or repair of electrical systems in the Dallas area from manufacturers located outside of Texas, and from jobbers located in the Dallas area who purchased the equipment from manufacturers who shipped the same on instructions from the jobbers direct from the factories to the defendant electrical contractors at their job sites. The defendants have been engaged in a combination and conspiracy in restraint of this aforesaid trade and commerce among the several states in electrical equipment and services in violation of the statute, which conspiracy consisted of a continuing agreement and concert of action among them, the substantial terms of which have been and are that the

"Defendants agree that defendant electrical jobbers will not sell lighting fixtures direct to consumers unless said jobbers include in their sales price a commission to be paid the defendant electrical contractors;

"Defendants agree that no corporation, firm, partnership, or individual shall operate both as an electrical jobber and an electrical retailer and that defendant electrical contractors will boycott any such corporation, firms, partnership, or individual so operating;

"Defendants agree that defendant electrical contractors will buy electrical equipment only from local jobbers including the defendant electrical jobbers;

"Defendants agree upon terms and prices for the sale of lighting fixtures by the defendant jobbers and contractors."

The defendants have done the things aforesaid which they conspired to do. Jurisdiction and venue are properly alleged.

The second count adopts as to the defendant electrical contractors group each allegation of the first count, and alleges in similar terms the combination and conspiracy which in this count is said to consist of agreement and concert of action that the

"Defendants agree that defendant electrical contractors will not hang lighting fixtures purchased by consumers direct from

electrical jobbers and that said contractors will boycott electrical jobbers who sell direct to consumers;

"Defendants agree that defendant electrical contractors will not enter into contracts with owners or builders to supply only the labor required in the installation, alteration or repair of electrical systems unless such owners or builders will pay an additional sum representing a substantial portion or all of the profit said defendant electrical contractors would have realized if the electrical equipment had been supplied by them;

"Defendants agree to stabilize bid quotations by establishing a so-called 'Big Registration System' under the terms of which each of the defendant electrical contractors agrees that in advance of submitting any bid in excess of $1,000 he will report his intention to submit such bid to defendant Lawrence Martin and to pay a fine to defendant Northeast Texas Chapter, NECA, for failure to so report."

These defendants have done the things which as above alleged they conspired and agreed to do. Jurisdiction and venue are properly alleged.

We think it unnecessary to discuss in detail each of the points of error presented by the Government and the counter points urged by the defendants in opposition thereto. There is no room for actual doubt upon the part of the defendants of the nature of the illegal agreements charged against them, and thus enable them to identify what is claimed are the terms of the conspiracy. They are therefore able to prepare for defense, and if necessary later to plead former jeopardy. The indictment charges violations of the statute. It goes beyond a charge of conspiracy in restraint of trade in the mere words of the statute, and in paragraph 22 a, b, c and d, of the first count, and paragraph 27, a, b and c of the second count, allege agreements which legally, and logically could, depending upon the evidence, show an agreement which contemplated an unreasonable restraint of trade. Under the circumstances alleged, the price fixing agreements and illegal inclusion of profits not related to the usual

trade, are illegal. Likewise may be the boycott of those who will not operate in accordance with the plan contemplated by the alleged agreement. Agreement upon prices and terms for the sale of lighting fixtures may likewise be shown to be illegal. In the very nature of the trade and commerce alleged, these agreements, some *per se,* and others as a matter of fact, constitute an illegal restraint upon interstate commerce, and an additional allegation to this effect would likely present only a conclusion of law subject to further objection on the part of the defendants. What has just been said as to the agreements charged in the first count, is likewise applicable to those charged in the second and is based upon principles already well established in such cases. U. S. v. Socony-Vacuum Oil Co., 310 U.S. 150, at page 224, note 59, 60 S.Ct. 811, 84 L.Ed. 1129; Eastern States Retail Lumber Dealers' Association v. United States, 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490, L.R.A. 1915A, 788; Montague & Co. v. Lowry, 193 U.S. 38, 24 S.Ct. 307, 48 L.Ed. 608; Fashion Originators Guild of America v. Federal Trade Commission, 2 Cir., 114 F.2d 80, affirmed 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949.

The joinder of offenses and of defendants is authorized by the provisions of Rule 8 of the Rules of Criminal Procedure, and such joinder therefore afforded no basis for dismissal of the indictment. If the trial Court by his statements with reference to prejudice resulting from a joint trial was lead to dismiss the indictment, he adopted the wrong procedure and should have rather applied the provisions of Rule 14 of the Rules of Criminal Procedure. The matter of either separate trial or election as to the offenses set forth in the two counts is for the determination of the trial court in the exercise of his legal discretion as justice may require. The same is likewise true as to the request for information in the nature of a bill of particulars. As to these matters we are not called upon to express any opinion at this time.

We have noticed, but reject, the contentions of the appellees, defendant electrical contractors, that the transactions com-

plained of are not such as to directly affect, or tend to affect, restraint upon interstate commerce, and their contention that under the definition and language of the indictment the transaction with reference to lighting fixtures are not included within the indictment definition of electrical equipment, as well as that by the terms of the indictment there is a difference between electrical systems and electrical equipment.

The judgment of the trial court ordering the dismissal of the indictment is set aside and the cause remanded for further and not inconsistent proceedings.

Judgment reversed.